UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:18-CV-00028-GNS-HBB

MARC H. JONES                                                                                               PLAINTIFF

v.

AMERICA'S AUTO AUCTION
BOWLING GREEN, INC.                                                                                    DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (DN 49) and Defendant's Motion for Leave to File Excess Pages (DN 48). The motions have been fully briefed and are ripe for decision. For the reasons stated below, Defendant's motions are **GRANTED**.

### I.     BACKGROUND

On February 27, 2018, Marc H. Jones ("Jones") filed this action against America's Auto Auction Bowling Green, Inc. ("America's Auto") asserting claims for employment discrimination, wrongful termination, and retaliation in violation of Title VII of the Civil Rights Act of 1964. (Compl. ¶¶ 1, 29-42, DN 1). Jones alleges that America's Auto attempted to hire an all-female salespersons team, enforced its dress code against men and not women, and promoted women instead of him. (Compl. ¶¶ 15-23). Jones filed a charge of Title VII employment discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 15, 2017, which issued a right-to-sue letter on November 29, 2017. (Compl. ¶ 24; Compl. Ex. A, at 1, DN 1-1). On August 23, 2017, Jones was terminated. (Compl. ¶ 27).

America's Auto seeks summary judgment on Jones' claims for reverse gender discrimination, retaliation, and "application of policy." (Def.'s Mem. Supp. Mot. Summ. J. 2). The motion is ripe for adjudication.

## II. JURISDICTION

This action arises under the laws of the United States and the Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## III. STANDARD OF REVIEW

In determining whether a party is entitled to summary judgment, the Court must decide whether there is any genuine issue of material fact left for the trier of fact. *See* Fed. R. Civ. P. 56(a). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party meets its burden, then the burden is on the non-moving to provide specific evidence of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

In making this determination, the Court must review the cited evidence, but it may also consider other material in the record such as depositions or documents. Fed. R. Civ. P. 56(c). The Court must view the evidence in the light most favorable to the non-moving party. *Tompkins v. Crown Corr, Inc.*, 726 F.3d 830, 837 (6th Cir. 2013). But the non-moving party must do more than provide a "scintilla of evidence" in support of its position; the non-moving party must put on sufficient evidence from which a jury could reasonably decide the issue in their favor. *Anderson*, 477 U.S. at 252.

It is not required that the non-moving party present evidence that would be admissible at the trial stage. *See Celotex Corp.*, 477 U.S. at 323 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary

judgment."). The non-moving party can offer evidence such as affidavits, declarations, documents, or electronically stored information.[1] *See id.* ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c) . . . .").

## IV. DISCUSSION

### A. Successor Liability

As a preliminary matter, the Court must determine whether the allegations of improper conduct before January 2017 are relevant to the claims asserted against America's Auto. Jones alleges multiple instances of improper conduct occurring before 2017, including hiring and paying a female salesperson, Kayla Allen ("Allen"), a higher starting salary of $50,000 compared to Jones' starting salary of $45,000. (Compl. ¶ 15). Additionally, Jones alleges Jeff Greer ("Greer")[2] stated that he wanted more "saleswomen", that "sex sells", and that the company needed to appease the "perverted" car dealers. (Compl. ¶¶ 16, 19). ABC was sold to America's Auto in January 2017. (Compl. ¶ 11). America's Auto contends that all allegations of improper conduct prior to its acquisition of ABC are immaterial because they cannot be imputed to America's Auto. (Def.'s Mem. Supp. Mot. Summ. J. 17).

"Successor liability is appropriate in the employment law context if the imposition of such liability would be *equitable*." *Carter v. Paschall Truck Lines, Inc.*, 364 F. Supp. 3d 732, 736 (W.D. Ky. 2019) (emphasis added) (internal quotation marks omitted) (citing *Comer v. Directv,*

---

[1] Jones has not responded to the motion. As the Sixth Circuit has noted, however, "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden." *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991).
[2] Greer was hired in 2016 as General Manager for ABC Bowling Green ("ABC"), which is America's Auto's predecessor in interest. (Compl. ¶ 14).

*LLC*, No. 2:14-CV-1986, 2016 WL 853027, at *5 (S.D. Ohio 2016)). When deciding whether imposition of liability would be equitable, the Court must consider: "1) the interests of the defendant-employer, 2) the interests of the plaintiff-employee, and 3) the goals of federal policy, in light of the particular facts of a case and the particular legal obligation at issue." *Id.* (citing *Cobb v. Contract Transp., Inc.*, 452 F.3d 543, 554 (6th Cir. 2006)).

Additionally, the Sixth Circuit has held these nine factors are appropriate when analyzing successor liability:

> (1) whether the successor company has notice of the charge; (2) the ability of the predecessor to provide relief; (3) whether the new employer uses the same plant; (4) whether there has been substantial continuity of business operations; (5) whether the new employer uses the same or substantially same workforce; (6) whether the new employer uses the same or substantially same supervisory personnel; (7) whether the same jobs exist under the same working conditions; (8) whether [the defendant] uses the same machinery, equipment and methods of production; and (9) whether [the defendant] produces the same product.

*Id.* at 737 (alterations in original) (quoting *Cobb*, 452 F.3d at 554). The Sixth Circuit made clear these factors were not the test for successor liability, but were only factors courts have previously considered when applying the three-part test from *MacMillan*. *Id.* (citation omitted). The pivotal questions remain whether the imposition of such liability would be equitable and whether it would be consistent with federal policy. *Id.* (citation omitted).

The imposition of successor liability would not be equitable here. Jones was hired by ABC in February 2014. (Compl. ¶ 11). America's Auto had no input as to his starting salary at the time. Shortly after Greer was hired in June 2016, he hired Allen and paid her more than Jones. (Compl. ¶ 15). Again, America's Auto had no input in this decision. Additionally, there is no evidence that America's Auto was made aware of Greer's previous statements regarding hiring more women before it acquired ABC. To the contrary, it appears that America's Auto did not learn of these allegations until after the sale was completed in January 2017.

4

Because Greer was kept on as General Manager, and the management team remained intact, if the statements attributed to Greer had been related to America's Auto before it purchased the business, they could be evidence that America's Auto participated or should be held responsible for ABC's discriminatory actions. However, because America's Auto had no notice of these charges and a timely opportunity to address them, it would be unequitable to impose successor liability on America's Auto. *See Carter*, 364 F. Supp. 3d at 736. Accordingly, America's Auto is not responsible for discriminatory acts by its predecessor in interest prior to its purchase of the business in January 2017.

### B.    Reverse Gender Discrimination

Title VII prohibits an employer from discriminating against any employee based on his or her sex. *See* 42 U.S.C. § 2000e-2(a) ("It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin . . . ."). Jones can offer either direct or circumstantial evidence to prove his discrimination claim under Title VII. *Bruce v. Meharry Med. Coll.*, 692 F. App'x 275, 278 (6th Cir. 2017) (citations omitted). "Circumstantial evidence allows the factfinder to draw a reasonable inference that discrimination occurred." *Id.* (citation omitted). Jones has not offered direct evidence; therefore, the reverse gender discrimination claim is analyzed according to the burden-shifting framework established in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *Laster*, 746 F.3d 714, 730 (6th Cir. 2014).

Under the *McDonnell Douglas* framework Jones initially bears the burden of establishing a *prima facie* case. *Id.* If Jones is successful, America's Auto bears the burden of production of evidence; America's Auto must articulate legitimate non-discriminatory reasons for actions taken. *Id.* If America's Auto is successful, Jones must proffer evidence as to why America's Auto's

5

stated reasons are not the true reasons that motivated its action. *Id.* "Although the burden of production shifts between the parties, the plaintiff bears the burden of persuasion through the process." *Id.*

To make out a *prima facie* case under the *McDonnell Douglas* framework, Jones must present evidence that: "(1) [he] is a member of a protected class; (2) [he] was qualified for the job and satisfactorily performed it; (3) [he] suffered an adverse employment action; and (4) others, similarly situated and outside the protected class, were treated differently." *Bruce*, 692 F. App'x at 278 (citation omitted). However, because Jones alleges "reverse discrimination–that is, he is a member of the majority claiming employment discrimination–the plaintiff bears the burden of demonstrating that he was intentionally discriminated against despite his majority status." *Wyatt v. Ky. Cmty. & Tech. Coll. Sys.*, No. 3:15-CV-00885-GNS, 2016 WL 3580787, at *2 (W.D. Ky. June 28, 2016) (citation omitted); s*ee also Malloy v. Potter*, No. 3:04-CV-39-S, 2007 WL 1031642, at *3 (W.D. Ky. 2007) ("In cases of *reverse* gender discrimination, the plaintiff satisfies the first element by demonstrating 'background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" (alteration in original) (citation omitted)).

Jones' claim for gender discrimination is based on allegations that: (1) the dress code policy was enforced against males and not females; (2) some of Jones' accounts were moved to female employees; and (3) a female employee was promoted and given supervisory authority over Jones. (Compl. ¶¶ 20-23). These actions could qualify as adverse employment actions. *See Laster*, 746 F.3d at 727 ("In the context of a Title VII discrimination claim, an adverse employment action is defined as a 'materially adverse change in the terms or conditions' of employment." (citing *Kocsis v. Multi-Care Mgmt. Inc.*, 97 F.3d 876, 885 (6th Cir. 1996))). However, in each of

these scenarios it is unclear whether Jones was discriminated against and America's Auto has offered legitimate non-discriminatory reasons for each action taken. First, America's Auto argues Jones was never disciplined for a violation of the dress code and the female employee Jones complained about was disciplined for violating the dress code. (Def.'s Mem. Supp. Mot. Summ. J. 33).

In addition, America's Auto provided a non-discriminatory basis for transferring some accounts from Jones to female sales representatives. Jones had worked for America's Auto and ABC for several years and had amassed hundreds of dealer accounts because of the size of the department. (Jones Dep. 48:4-10, Jan. 20, 2020, DN 49-2). America's Auto began to hire more sales representatives and divided the existing accounts among the sales representatives. (Kirby Dep. 27:15-17, Feb. 12, 2020, DN 49-10; Jones Dep. 45:4-6). Some of Jones' previous accounts were assigned to both male and female sales representatives, and there is no evidence Jones complained or made any effort to get those accounts back. (Jones Dep. 61:15-25, 138:12-21). Accounts could also be reassigned based on prior relationships with dealers or at a dealers' request. (Kirby Dep. 23:19-25; Jones Dep. 83:22-25). Thus, America's Auto contends the accounts were reassigned based on the need for efficiency or business relationships, not gender.

Additionally, Jones alleges that a female employee, Karol Kirby ("Kirby"), was promoted and given supervisory authority over him. (Compl. ¶ 23). America's Auto proffers that Kirby was promoted based upon her qualifications, including her 20 years of experience in the industry. (Kirby Dep. 8:10-13).

Assuming Jones established a *prima facie* case for gender discrimination, America's Auto has met its burden of proffering legitimate non-discriminatory reasons for its actions. *See Laster*, 746 F.3d 714 at 730. Jones has not offered evidence to dispute these stated reasons. Therefore, the Court grants summary judgment on Jones' gender discrimination claim.

C.     **Retaliation**

Title VII prohibits an employer from discriminating against an employee or applicant because they have opposed an employer's practice under Title VII. *See* 42 U.S.C. § 2000e-3 ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."). "The term 'oppose,' being left undefined by the statute, carries its ordinary meaning, 'to resist or antagonize […]; to contend against; to confront; resist; withstand.'" *Laster*, 746 F.3d at 730-31 (alteration in original) (citations omitted).

"Title VII retaliation claims can be established either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation." *Kuklinski v. Mnuchin*, 829 F. App'x 78, 82 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 538 (6th Cir. 2008)). Jones has not proffered direct evidence; therefore, the retaliation claim is analyzed according to the burden-shifting framework established in *McDonnell Douglas*. *Laster*, 746 F.3d 714 at 730.

The initial burden is on Jones to make out a *prima facie* case for retaliation. *Id.* If Jones is successful, "the burden of production of evidence shifts to the employer to articulate some legitimate, non-discriminatory reason for its actions." *Kuklinski*, 829 F. App'x at 82 (internal

quotation marks omitted) (citations omitted). If America's Auto satisfies its burden, the burden of production shifts back to Jones to show his employer's "proffered reason[s were] not the true reason[s] for the employment decision." *Id.* (alterations in original) (internal quotation marks omitted) (citation omitted). Throughout this analysis the burden of persuasion remains with Jones. *Id.* (citing *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007)).

To make out a *prima facie* claim of retaliation Jones must establish four requirements: "(1) he engaged in protected activity; (2) his exercise of such a protected activity was known by the defendant; (3) thereafter, the defendant took an action that was materially adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." *Id.* (internal quotation marks omitted) (citations omitted).

There is no dispute regarding the first three elements of a *prima facie* claim: Jones filed an EEOC charge against America's Auto and he was later terminated his employment. (Compl. ¶¶ 24-27). The question is then whether there is a causal connection between the EEOC charge and Jones' termination. *See id.* Jones claims that he was written up for the first time after he filed his EEOC charge, which could be considered circumstantial evidence that America's Auto had it out for Jones because he filed the EEOC charge. (Compl. ¶ 25). Of course, circumstantial evidence can be used to prove a retaliation claim. *See Kuklinski*, 829 F. App'x at 82.

Without more, the fact that Jones was written up is not enough to establish a causal connection between the EEOC claim and the write-up and eventual termination. Even if it is, America's Auto has met its burden of providing non-discriminatory reasons for its actions. *See id.* America's Auto states that on May 24, 2017, it received a complaint about Jones from a customer and the dealer asked for a new salesperson. (Def.'s Mot. Summ. J. Ex. J, DN 49-11).

9

America's Auto received an additional complaint about Jones from a second dealer who stated that Jones had threatened it with a poor place in the auction if the customer asked for a new sales representative. (Def.'s Mot. Summ. J. Ex. L, DN 49-13). A third customer complained, stating it would not do business with America's Auto as long as Jones was employed there. (Def.'s Mot. Summ. J. Ex. L; Kirby Dep. 38:11-13). Based on these customer complaints, Jones was issued a written warning. (Kirby Dep. 41:22-25). America's Auto has also provided evidence of a big drop off in sales for Jones which, coupled with the customer complaints, were the reasons it fired Jones. (Def.'s Mot. Summ. J. Ex. N, DN 49-15).

Jones has offered no rebuttal to America's Auto's articulated reasons or shown that these reasons were not the true reasons he was terminated. *See Kuklinski*, 829 F. App'x at 82. Therefore, the Court grants summary judgment on Jones' retaliation claim.

### D. Application of Policy

Jones' third cause of action is for "application of policy" in violation of Title VII. (Compl. ¶¶ 38-42). It is unclear how "application of policy" is a cause of action under Title VII. If the cause of action is for having and applying a policy of gender discrimination, then the cause of action would be gender discrimination. Jones has provided no evidence or authority to support this cause of action and did not respond to America's Auto's dispositive motion. Therefore, the Court grants summary judgment on this claim.

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Defendant's Motion for Summary Judgment (DN 49) is **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

2. Defendant's Motion for Leave to File Excess Pages (DN 48) is **GRANTED**.

10

      3.      The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

March 8, 2021

cc: counsel of record

11